Cline *et al.* v. Lindsey *et al.*

Filed April 8, 1887.

---

No. 12,215.

CLINE ET AL. *v.* LINDSEY ET AL.

WILL.—*Proceeding to Set Aside.*—*Insanity.*—*Instruction Upon Weight of Testimony.*—In a proceeding to set aside a will on the ground of the mental incapacity of the testator to execute it, an instruction to the jury, that the testimony of the testator's neighbors, who had long been acquainted with him, and who had frequent opportunities of observing his mind, was entitled to greater weight than that of witnesses of equal sagacity, whose opportunities were more limited, is incorrect.

SAME.—*Evidence.*—*Opinions of Non-Expert Witnesses.*—The rule which allows the opinions of non-expert witnesses to be given upon the question of insanity, is one of necessity, and rests upon the proposition that there may be something in the looks, deportment, etc., of the person, not describable in words, which may contribute to the conclusion that he is of unsound mind.

SAME.—*Instructions as to Testamentary Capacity.*—*Interrogatories to Jury.*—For· a series of instructions upon the subject of testamentary capacity, and for interrogatories to the jury and answers thereto showing an utter· want of such capacity, see opinion.

.INSTRUCTIONS TO JURY.—*Harmless Error.*— *Supreme Court.*—A judgment will not be reversed on account of the giving of an erroneous instruction, if it was favorable to the party complaining or worked no injury to him.

SAME.—*Must be Considered Together.*—In civil cases, all the instructions given will be considered together, and if, thus considered, the law is correctly stated and the case fairly presented to the jury, the judgment will not be reversed because any one of the instructions, taken alone, may be inaccurate or not sufficiently full.

SUPREME COURT.—*Reversal of Judgment.*—*Affirmative Showing of Error.*—To justify the Supreme Court in reversing a judgment, the record must affirmatively show that there was error in the proceedings below, and that. the error was, or probably was, prejudicial to the party complaining on appeal.

SAME.—*Instruction.*—*Motion for New Trial.*—No question can be made in· the Supreme Court upon an instruction, the giving of which was not assigned as a cause for a new trial in the trial court.

From the Union Circuit Court.

*H. C. Fox, J. F. Robbins* and *T. W. Bennett,* for appellants.. *T. D. Evans* and *L. H. Stanford,* for appellees.

ZOLLARS, J.—Lewis J. Cline died on the 26th day of˙ January, 1884. By his last will, executed on the 22d day of that month, he bequeathed all of his property to appel-- lants, children of a brother.

Appellees brought this action to set aside that will on the ground that at the time it was executed, the testator was a person of unsound mind, and hence incapable of making a valid will. With the will out of the way, appellees and the father of appellants are entitled ˙to the property left by Lewis J. Cline, as his heirs at law, being his brothers, sister, and the descendants of deceased sisters.

Upon a verdict of the jury in favor of appellees, the court below, over appellants' motion for a new trial, set aside the will. Appellants ask for a reversal of the judgment upon ˳the alleged error of the court in charging the jury.

Cline *et al. v.* Lindsey *et al.*

Our attention is first called to the twentieth instruction given by the court. It is as follows:

" 20th. In weighing the testimony of witnesses, the jury should consider their capacity to understand the facts about which they testify, their opportunity of knowing the mental condition of the testator. The testimony of the testator's neighbors, who have long been acquainted with him, and have had frequent intercourse with him, and whose attention has been particularly called to the testator, who have had frequent opportunities of observing his mind, is entitled to greater weight than that of a witness of equal sagacity, whose opportunities were more limited. The facts upon which the witnesses' opinions are based have been given you, and of these you are the judges, weighing the facts as they have been given, in order to determine the condition of the testator's mind. You are to weigh each particular incident and fact stated to you by the witnesses, and to determine from the whole whether or not the testator, at the time of the execution of the will, was or was not of sound mind. You are to take into consideration the will itself and its provisions, its unjustness or hardships, if any exist, to determine the soundness or unsoundness of the testator's mind."

The objection urged to the instruction by appellants' counsel is, that the court thereby invaded the province of the jury by charging, as a matter of law, that the testimony of the testator's neighbors, who had long been acquainted with him, etc., was entitled to more weight than the testimony of other witnesses of equal sagacity, whose opportunities had been more limited.

Considered without reference to any other charge that may have been given, the above instruction, in our judgment, is open to the objection urged against it.

It may be true, as a matter of fact, that the testimony of the neighbors of the testator, who had the advantages and opportunities named, was entitled to more weight than the testimony of other witnesses of equal sagacity, who had had

less opportunities because of less acquaintance with the testator. But that was a fact to be determined by the jury as a fact, and not by the court as a question of law.

The instruction, it will be observed, leaves out of view the essential element of credibility. The neighbors of the testator may have had greater opportunities and may have been of equal sagacity with other witnesses having had less opportunities, and yet be less worthy of credence.

Nor does it follow necessarily, and as a matter of law, that the testimony of one of two witnesses, of equal sagacity, is entitled to greater weight simply because he may have had more acquaintance with, and more frequent opportunities to observe, the person whose sanity is in question. The witness who has had less acquaintance, and less opportunities, may yet be the most reliable witness, because of some special training, experience, or habit of closely observing persons whom he meets. In all such cases, it is for the jury to determine for themselves to what witness they will give the most credence. They have a right to consider the fact that some of the witnesses may have had greater opportunities than others. The court may instruct them that they have such right, but it ought not to invade their province, and undertake to determine for them what witness is the most reliable.

The latter portion of the instruction, in which the jury were charged that they should weigh the facts given by the witnesses as the facts upon which they based their opinions, does not relieve the instruction from the objection urged by appellants' counsel. In the first place, the charge directing the jury that the testimony of the one class of witnesses was entitled to the greater weight, is general, and embraces all that those witnesses testified to; and, in the second place, it was impossible for the non-expert witnesses, giving their opinions as to the insanity of the testator, to state to the jury everything upon which those opinions were based. If they could have stated everything upon which they based their

opinions, the opinions would have been incompetent. The rule which allows such opinions, is a rule of necessity, and rests upon the proposition that there may be something about the looks, deportment, etc., of a person which may contribute to the conclusion that he is of unsound mind, which can not be described in words by the witness. *Carthage T. P. Co.* v. *Andrews*, 102 Ind. 138 (52 Am. R. 653).

That the instruction was erroneous, because the court thereby invaded the province of the jury, by directing them that the testimony of one class of witnesses was entitled to more weight than the testimony of another class, is well settled by our cases. *Fulwider* v. *Ingels*, 87 Ind. 414, and cases there cited; *Voss* v. *Prier*, 71 Ind. 128; *Dodd* v. *Moore*, 91 Ind. 522, and cases there cited; *Works* v. *Stevens*, 76 Ind. 181; *Woollen* v. *Whitacre*, 91 Ind. 502, and cases there cited; *Nelson* v. *Vorce*, 55 Ind. 455; *Goodwin* v. *State*, 96 Ind. 550 (569), and cases there cited; *Unruh* v. *State, ex rel.*, 105 Ind. 117, and cases there cited; *Morris* v. *State, ex rel.*, 101 Ind. 560, and cases there cited; *Bird* v. *State*, 107 Ind. 154, and cases there cited; *Vanvalkenberg* v. *Vanvalkenberg*, 90 Ind. 433.

A part of one of the instructions approved in the case of *Rush* v. *Megee*, 36 Ind. 69 (84), is similar to the instruction here condemned, but the probability is that in that case the attention of the court was not called to the objections urged here.

The instruction as given is erroneous, but it does not follow that because of the error of the court in giving it, the judgment must be reversed.

It is well settled that to justify this court in reversing a judgment, the record must affirmatively show that there was error in the proceedings below, and that the error was, or probably was, prejudicial to the party complaining here. For example, a judgment will not be reversed on account of the erroneous admission of evidence that does not harm the party complaining. *Binns* v. *State*, 66 Ind. 428; *Powers* v.

*State*, 87 Ind. 144; *Rothrock* v. *Perkinson*, 61 Ind. 39; *Vanvalkenberg* v. *Vanvalkenberg, supra.*

A judgment will not be reversed because a demurrer has been sustained to a good paragraph of a pleading which sets up a cause of action or a defence admissible under another paragraph of the same pleading. *Board, etc.,* v. *Jameson*, 86 Ind. 154; *Fuller* v. *Wright*, 59 Ind. 333; *Epperson* v. *Hostetter*, 95 Ind. 583; *Luntz* v. *Greve*, 102 Ind. 173; *Mason* v. *Mason*, 102 Ind. 38; *Landwerlen* v. *Wheeler*, 106 Ind. 523.

A judgment will not be reversed because of the refusal of instructions which contain correct statements of the law, if the substance of them is embraced in others given. *Indiana Manf'g Co.* v. *Millican*, 87 Ind. 87; *City of Indianapolis* v. *Murphy*, 91 Ind. 382; *Bowen* v. *Pollard*, 71 Ind. 177; *Bronnenberg* v. *Coburn, ante,* p. 169; *National Benefit Ass'n, etc.,* v. *Grauman*, 107 Ind. 288; *Barnett* v. *State*, 100 Ind. 171.

The refusal of a correct instruction is not available for a reversal of the judgment by this court, if the complaining party was not injured thereby. *Louisville, etc., R. W. Co.* v. *Krinning*, 87 Ind. 351. And so, a judgment will not be reversed on account of the giving of an erroneous instruction, if the instruction was favorable to the party complaining here, or worked no injury to him. *Smith* v. *State*, 28 Ind. 321; *Rollins* v. *State*, 62 Ind. 46; *Worley* v. *Moore*, 97 Ind. 15; *Cleveland, etc., R. R. Co.* v. *Newell*, 104 Ind. 264.

It appears here that an erroneous instruction was given, but it is not shown by the record that the giving of it was prejudicial to appellants. The evidence is not in the record, nor is there anything in the record showing, or tending to show, that the witnesses spoken of in the charge as the neighbors of the testator, were witnesses below in behalf of appellees. For aught that is shown by the record, they may have been called by appellants, and may have testified in their behalf, that the testator was a person of sound mind, and hence capable of making the will.

This court can not assume anything, not affirmatively

shown by the record, in order to overthrow the judgment. The record does not show directly or indirectly, and we can not presume, that appellants were injured by the instruction.

It is contended by counsel for appellees, that this instruction should be considered in connection with a subsequent one given by the court, and that when the two are thus considered together, they state the law correctly, and that the objection above discussed is thus removed. Having reached the conclusion that the judgment should not be reversed on account of the instruction under examination, it is not necessary for us to set out the instruction referred to by counsel, nor enter upon an examination of the point made by them.

Next in the order of argument by appellants' counsel, is the twenty-third instruction given by the court.

No question can be made in this court as to that instruction, for the reason that the action of the court in giving it was not assigned as a cause for a new trial in the court below. *Hampson* v. *Fall*, 64 Ind. 382 ; *Northwestern Mutual Life Ins. Co.* v. *Heimann*, 93 Ind. 24, and cases there cited.

Appellants object to each and all of the instructions given upon the question of testamentary capacity. It is settled by a long line of decisions by this court, that in civil cases all of the instructions given should be considered together, and in connection with each other, and that if, thus considered, the law of the case is correctly stated, and the case is fairly and intelligently presented to the jury, the judgment will not be reversed because any one of the instructions, taken alone, may not be sufficiently full, or may contain incorrect statements. *Nicoles* v. *Calvert*, 96 Ind. 316 ; *Wright* v. *Fansler*, 90 Ind. 492 ; *Louisville, etc., R. W. Co.* v. *Jones*, 108 Ind. 551, and cases there cited ; *Town of Rushville* v. *Adams*, 107 Ind. 475; *Union Mutual Life Ins. Co.* v. *Buchanan*, 100 Ind. 63 (74).

We think it sufficient here to give the substance of the several instructions upon the question of testamentary capacity, and to examine them as a whole, without extending

this opinion to set them out in full, or to examine separately the several objections urged to each.

The complaint charges that at the time the testator executed the will he was a person of unsound mind.

In the first charge, the jury were instructed that in order to find for the plaintiffs, they must find the allegations of the complaint to be true.

In the fifth charge, the jury were instructed that if they believed from the evidence that the testator, at the time he executed the will, was of sound and disposing mind, the verdict should be for the defendants.

The sixth·instruction was as follows : " In legal contemplation, one who has sufficient mind to know and understand the business in which he is engaged, who has sufficient mental capacity to enable him to know the extent of his estate, the persons who would naturally be supposed to be the objects of his bounty, and to keep these in his mind long enough, and could form a rational judgment in relation to them, is a person of sound mind."

The seventh charge was as follows : "As to the testator's capacity, he must, in the language of the law, have a sound and disposing mind and memory. In other words, he ought to be capable of making his will with an understanding of the nature of the business in which he is engaged, the property he means to dispose of, the persons who are the objects of his bounty, and the manner it is to be distributed between them."

In the eighth instruction, the jury were charged that a person may be in a state of extreme bodily imbecility, and yet have sufficient understanding to direct how his property shall be disposed of.

In the tenth charge, the jury were instructed that the question for them to determine was, whether the testator executed the will understandingly.

In the twelfth instruction, the jury were charged, amongst other things, that a person is capable of making a valid will,

if, at the time he executes it, he has mind enough to know and understand the business in which he is engaged.

The thirteenth charge was, that when a person has become the victim of mental derangement, amounting to unsoundness of mind in any form, under our statute, he is incompetent to make a will, while laboring under such derangement.

The substance of the fourteenth charge is, that if a person labors under illusions, delusions, and hallucinations, such as no sane man could believe, such belief is unequivocal evidence of mental unsoundness, and that should the jury believe from the evidence that such was the condition of the mind of the testator at the time he executed the will, they would be warranted in finding for the plaintiff.

In the fifteenth instruction, the jury were charged, that in order to make a valid will, the testator must have had something more than a mere passive memory; that he must have had sufficient active memory to collect in his mind, without any prompting, all his business, and know just what he desired to do; that if his brain was so weakened by disease that he did not thus know and act, he was a person of unsound mind.

It was charged in the sixteenth instruction, that if, from disease or any other cause, the mind or memory of the testator had become so impaired or clouded that he did not fully know or understand what he was doing when he executed the will, he was, for all the purposes of the will, a person of unsound mind, and incapable of executing it.

In the seventeenth charge, the jury were instructed that in order to make a valid will the law requires that the testator should have known the value and extent of his property, the number and names of the persons who were the natural objects of his bounty, their deserts, their capacity and necessities, and that he should have had sufficient active memory to retain those facts in his mind long enough to have his will prepared and executed; that he should have had a rational understanding and comprehension of all those things,

and of the consequence of his acts, and an intelligent purpose and determination to so dispose of his property.

One of the propositions discussed by appellants' counsel with learning and ability is, that although a person, at the time of making his will, may have been laboring under insane illusions, delusions and hallucinations, yet that fact will not affect the will unless such delusions, etc., influenced the testator in the making of the will; in other words, unless such illusions, etc., in some way, entered into the will. They maintain that the opposite of that proposition was laid down in the instructions.

We do not find it necessary to here enter upon an examination of the proposition discussed by counsel, nor upon a review of our cases, so far as anything has been said and decided upon that question.

If it should be conceded, as claimed by counsel, that the instructions put the case to the jury upon the theory that if the testator was laboring under insane delusions, etc., at the time he made the will, that fact alone would invalidate the will, it would not follow that the judgment should be reversed.

The record in no way shows that such insane delusions, etc., if any there were, did not prompt the will and enter into it. If they did, upon appellants' theory of the law, the will was invalid, and they were not injured by the instructions. As we have before said, it must affirmatively appear by the record, not only that error intervened, but also that the party complaining was, in fact or presumably, injured by the error. But it can not be correctly said, that taking all of the instructions together, the case was placed before the jury as contended by counsel. It is not stated in any instruction, that if the testator was laboring under insane delusions which did not at all prompt, enter into, or affect his will, the will would be invalid.

The general propositions pervading all of the instructions upon the subject of testamentary capacity are, that if, at the

time he executed the will, the testator had sufficient mental capacity to understand the business in which he was engaged, to recollect and keep his business in mind, to know and understand the extent and value of his property and how he wanted it disposed of, to recollect and know the persons who were the natural objects of his bounty, and to keep those facts and objects in mind long enough to dictate his will without prompting from others, he had sufficient capacity to make the will.

The foregoing may be regarded as a fair summary of the instructions as a whole; and, so regarded, the instructions were as favorable to appellants as they could rightfully ask.

Some of the instructions, if considered alone and without reference to others upon the same subject, are open to some of the criticisms by appellants' counsel, but, taken as a whole, we can not say that the case was not fairly presented to the jury.

The record affirmatively shows that appellants could not have been injured by any instruction upon the subject of delusions. With their general verdict the jury returned answers to special interrogatories. The several interrogatories related to the condition of the testator's mind at the time he made the will, and were, in substance, as follows:

1st. Did he have mind and memory sufficient to understand that he was making a will and disposing of his property, and to act with discretion therein?

2d. Did he understand and comprehend the nature of his act in the execution of his will?

3d. Did he have mind and memory enough to understand the nature of his estate, and to know the persons to whom he wished to give it?

4th. Did he have mind and memory sufficient to understand and know, with sense and judgment, the objects of his bounty, to realize and comprehend the character and amount of his estate, the number, names, and necessities of his blood

relatives, and to hold all these in mind long enough to direct the writing of his will ?

5th. Did he have sufficient active memory to know and comprehend the number, names, and necessities of those who were entitled to his bounty, the whole amount of his estate, and how he wished the same to be disposed of, without prompting from others ?

To all of the above interrogatories, the jury returned negative answers.

It is thus made to appear that the testator was utterly unfit to make a will. He did not even comprehend what he was doing in executing the will. It is thus made to appear,. also, that appellants could not have been injured by any instruction given upon the subject of delusions, even if erroneous, if, indeed, it is not made to appear that they could not have been injured by any other instructions upon the subject of testamentary capacity, if it should be conceded that any of them were erroneous.

A judgment will not be reversed on account of an erroneous instruction, when it is thus made to appear that no injury resulted therefrom to the complaining party. *Worley* v. *Moore*, 97 Ind. 15; *Cleveland, etc., R. R. Co.* v. *Newell*, 104 Ind. 264; *Ricketts* v. *Harvey*, 106 Ind. 564.

Upon the whole case, we think that the judgment ought to be affirmed.

Judgment affirmed, with costs.

Filed April 8, 1887