## Tatum vs. Mohr.

The attesting witness to an instrument of writing being out of the jurisdiction of the court, the execution of the instrument may be proved by another witness.

A bill of sale of personal property, with covenant of warranty, is assignable so as to vest in the assignee a right of action for a breach of the warranty: or if not, the right of the warrantee to bring an action for a breach of the warranty is not affected by his assignment of the bill of sale and its re-assignment to him.

The plaintiff having sued the defendant for a breach of covenant warranting the soundness of a slave, for which he had given another slave in exchange, it is not competent for the defendant to prove, under issues to pleas denying the warranty, and the unsoundness of the slave, that the slave received by him was unsound: He can do so only by appropriate plea, or by special notice, under the general issue, that he intends to avail himself of it by way of recoupment.

The measure of the plaintiff's damages, under the general issue in such case, is not the value of the slave given by him in exchange, but the difference between what

the slave received by him would have been worth, if sound, and his actual value, together with reasonable expenses.

It is competent for witnesses skilled in the science and practice of medicine to give their opinions to the jury on questions involving the soundness of a slave, in relation to the disease with which he was afflicted, its character, etc., but the jury are the judges of the weight to be attached to their opinions.

In the absence of other evidence, the price of a negro agreed upon by the parties and stated in the bill of sale, will be regarded as the value of the negro if he had been sound.

On general principles, in a suit for unliquidated damages, the plaintiff is not entitled to recover interest as such; and if in such case he is entitled to recover it under the statute it is a question for the jury and not the court.

The rule as to doubts in criminal cases is not applicable to civil suits, as decided in *Yarbrough vs. Arnold,* (20 *Ark.* 592.)

The plaintiff having proved that he had requested the defendant to take the negro back stating that he was unsound when he let the plaintiff have him, the declaration of the defendant that he was sound when he let the plaintiff have him, is not evidence in his favor, to be considered by the jury, that the negro was sound, but was competent to show merely that he controverted the declaration of the plaintiff.

The plaintiff is entitled to recover on the warranty of soundess of a negro, if he be unsound in body though his mind is unaffected by the disease.

## Appeal from Union Circuit Court.

Hon. Shelton Watson, Circuit Judge.

Watkins & Gallagher, for the appellant, contended that there was no proof that Henry was unsound at the time of the exchange; and if there was any proof that he was unsound afterwards, no unsoundness was proved within the rule.  1 *Par. on Con.* 473.

The opinions of physicians are usually received in evidence, but such opinions are not to be received implicitly in all cases, (*Cowen & Hills notes to Ph. Ev. part* 1, 762); and the instruction that their opinions was *good evidence,* and as such the jury should consider them in this suit, was erroneous.

The case turned upon the question whether the boy was unsound at the time of the transfer, and certainly if the jury had any reasonable doubt of this, they could not give the plaintiff a verdict.

The declaration of the defendant when he refused to take the

negro back, that he was sound when he traded him to plaintiff, was evidence in his favor. He had the right to have the whole of the conversation go to the jury to be weighed and considered by them.

Admitting the breach of the warranty, the plaintiff is not in a position to derive any benefit from the warranty, he having sold the boy and afterwards purchased him back, (*Boyd Ex. vs. Whitfied*, 19 *Ark.*,) and having assigned the bill of sale containing the warranty to the purchaser.

CARLETON and GARLAND, for the appellee.

The first instruction on the part of the plaintiff below is the law. 1 *Greenl. Ev. sec.* 440. If it were too general, it was qualified by the 7th instruction asked by the defendant and given by the court. 17 *Ark.* 292.

The bill of sale was *prima facie* evidence of the value of Henry, if sound, at the time of the exchange. 1 *Ark.* 313; 5 *Eng.* 142.

The rule as to reasonable doubt does not apply in civil cases. The jury determine according to the weight of evidence. 20 *Ark.* 592.

Under the warranty in this case, either physical or mental unsoundness was a breach of it.

The fact that the negro was unsound at the time of the exchange was sufficiently proved to sustain the verdict, and there being no error in the ruling of the court, the motion for a new trial was properly overruled.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

This was an action of assumpsit brought by Mohr against Tatum, in the Union Circuit Court, for breach of a contract warranting a slave to be sound.

The substance of the contract, as alleged in the declaration, is that on the 28th of January, 1856, the parties made an exchange of slaves. That plaintiff gave the defendant a slave named Alfred worth $1200, for a slave of defendant, named

Henry, valued at $900, and his note for $300, and that defendant warranted Henry to be sound in body and mind, but that he proved to be unsound and worthless, and that plaintiff was subjected to certain expenses in taking care of the slave, and for medical services, etc.

The defendant pleaded to the declaration generally:

1. Non-assumpsit.

2. That the slave Henry, at the time of the exchange, was sound.

3. That he was not unsound.

4. To the first and second counts—that the slave was not unsound in body and mind.

5. To the third and fourth counts—the same·

Issues were taken to the pleas, the case submitted to a jury and verdict in favor of plaintiff for $1,088 damages.

The court overruled a motion for a new trial, and the defendant excepted and appealed.

1. On the trial, the plaintiff read in evidence a bill of sale executed to him by the defendant for the slave Henry, bearing date 28th January, 1856, warranting him to be sound in body and mind, ect., also two assignments upon the bill of sale, the first from the plaintiff to one Chipman, dated 4th February, 1856, and the other from Chipman back to the plaintiff bearing date the 10th of the same month.

These assignments were witnessed by one Hawley, and the court permitted the plaintiff to prove his hand writing, and the signatures to the assignments, by another witness, after showing that the attesting witness was a resident of Illinois, and the defendant excepted.

The attesting witness being out of the jurisdiction of the court, the plaintiff had the right to introduce another witness to prove the execution of the assignments. *Brock vs. Sexton*, 5 *Ark.* 708; *Wilson vs. Royston*, 2 *Ib.* 319.

The assignment upon the bill of sale from Chipman to plaintiff was read in evidence against the objection of defendant; and it is insisted that it was inadmissible, because the bill of sale was not assignable so as to vest the right of action in the

plaintiff, being a mere chose in action, and not, it is insisted, within our statute of assignments. If this position be correct, the assignment of the bill of sale by the plaintiff to Chipman did not vest in him the right of action upon the warranty, but it remained in the plaintiff, and the re-assignment of the bill of sale to him by Chipman did not prejudice his right of action. The proposition, that the bill of sale was not assignable, is not correct, or if it is, it proves too much for the purpose of the defendant. (19 *Ark* 461.)

2. Defendant proposed to prove by a witness (Sylvanus Scoggins) that the negro Alfred, which he received from the plaintiff in exchange for Henry, was of no value whatever, which the court excluded; and this is assigned as the second ground of the motion for a new trial.

There was no issue in the case under which this evidence was admissible. If the plaintiff warranted the slave Alfred to be sound, or to possess qualities which rendered him valuable, and he proved to be unsound, or otherwise worthless, the defendant had his remedy by cross-action; or by appropriate plea, or special notice under the general issue, he might have availed himself of it by *recoupment. McLure vs. Hart,* 19 *Ark.* 119. In the absence of any such plea, or notice, the plaintiff might have been surprised by the admission of the proposed evidence.

Under the pleadings in the case, the measure of the plaintiff's damages was not the value of the boy Alfred, but the difference between what Henry would have been worth at the time of the exchange of the slaves, if he had been sound, as he was warranted to be, and his actual value in his unsound condition (if proven to have been unsound) together with resonable expenses necessarily incurred by the plaintiff in consequence of such unsoundness, etc. *Sedgwick on Damages* 291.

3. The third ground of the motion for a new trial is, that the court erred in giving the instructions moved by the plaintiff.

On the motion of the plaintiff the court instructed the jury first: "That the opinion of practicing physicians is *good evidence*

on the points pertaining to their profession, and as such they will consider the opinions given by the physicians in this case."

Several physicians who attended the negro Henry after the plaintiff purchased him, and before his death, gave it as their opinion that he was afflicted with hereditary scrofula, though they admitted that it was possible that they might be mistaken in their conclusion.

What the court meant the jury to understand by the opinion of the physicians being *good evidence,* and that they must so consider it, we do not know.

If the witnesses were skilled in the science and practice of medicine, it was competent for them to give their opinions to the jury in relation to the disease with which the negro was afflicted—its character, when it it was contracted, its effects, etc.; but the jury were the judges of the weight to be attached to their opinions, and this would depend upon their skill, experience, the examination which they gave the patient, their opportunities for observing the symptoms and effects of the disease, their mental capacity, etc., etc. *Wharton Med. Jurisp. p. 77, and note.* In many cases the opinions of professional men are entitled to great consideration and respect; in others but little. *Ib.*

If the above instruction had been the only one given by the court to the jury in relation to the opinion of the physicians, we should be inclined to think that they might have been mislead by it; but at the instance of the defendant, the court instructed the jury, "that the opinions of practicing physicians are not conclusive; and it is the province of the jury to give their opinions such weight as they think they are entitled to."

The second instruction given at the instance of the plaintiff is: "That if the jury believe from the evidence that the boy Henry was diseased by scrofula at the time of the sale, and which rendered him afterwards valueless, and of which he finally died, they will find for the plaintiff the amount of the bill of sale, with six per cent. interest, and the expenses which

they may believe from the evidence plaintiff had to pay for keeping, medical bills, etc."

We have stated above, that in a suit upon a warranty of soundness of personal property, the measure of the damages is the difference between the value which the thing sold would have had at the time of the sale, if it had been sound or corresponding to the warranty, and its actual value with the defect. The rule is so stated by *Sedgwick*. The price paid for the article is strong but not conclusive evidence of the value at the time of the sale; that is, of the value of the property supposing it to be sound as warranted. *Ib*. 291.

In this case no witness testified what Henry would have been worth at the time of the exchange if sound. In the bill of sale nine hundred dollars is recited as the price paid by the plaintiff for Henry, and it was proven by a witness that the boy Alfred was taken by the defendant in exchange. In the absence of other evidence, the price recited in the bill of sale would be taken as the price agreed upon by the parties, and be regarded as the value of the negro if he had been sound as warranted. If he was unsound and worthless, the plaintiff was entitled to recover that value.

We understand the court to have instructed the jury that the plaintiff was entitled to recover interest upon the value of the slave, thus ascertained, from the date of the exchange.

This was an error. On general principles, in a suit, like the present, for unliquidated contested damages, the plaintiff is not entitled to recover interest as such. *Sedgwick on Damages*, 377; 1 *Peters C. C. Rep.* 85; *Ib.* 172; 1 *John. Rep.* 315; 5 *Cowen* 587. If the plaintiff was entitled to interest under the statute, *Gould's Dig. ch.* 92, it was under that clause of the first section which allows interest "on money due and withheld by an unreasonable and vexatious delay of payment," and this was a question for the jury. *Rogers vs. West*, 9 *Ind.* 403.

4. The fourth ground of the motion for a new trial is, that the court erred in refusing to give the second, third, fifth, and sixth instructions moved by the defendant.

The second instruction was, that if the jury had any reasonable doubt as to whether the boy Henry was unsound at the time of the transfer, they must find for the defendant. And the third was, that they must be satisfied beyond a reasonable doubt, that a negro which one of the witnesses testified about, was the identical boy in controversy.

The court did not err in refusing these instructions. It was decided by this court in *Yarbrough vs. Arnold et al.,* 20 *Ark.* 592, that the rule as to doubts in criminal cases was not applicable to civil suits.

The *fifth* instruction was that the declaration of the defendant, at the time the plaintiff offered to rescind the contract with him, as testified to by the witness *Chipman,* was evidence in his favor, to be considered by the jury.

*Chipman* testified that he went with plaintiff to see defendant to get him to take the boy, Henry, back. Plaintiff requested defendant to take the boy back, because the boy, as plaintiff stated to defendant, was unsound. Defendant refused to do so, stating at the time, as a reason for not doing so, that the boy was sound when he let plaintiff have him.

When plaintiff declared to defendant that the boy was unsound, if the defendant had made no response, his silence might have been taken as an implied admission, for what it was worth, of the truth of the charge. The plaintiff's declaration being introduced, it was competent and proper to admit in evidence the response of the defendant, not as evidence that the boy was sound when he let the plaintiff have him, but merely to show that he controverted the declaration of the plaintiff.

The court did not err in refusing the *fifth* instruction.

The *sixth* instruction was, that unless the jury believed from the evidence that Henry was unsound in body and *mind,* at the time of sale, they must find for the defendant.

This instruction was properly refused.

If the negro was unsound in *body* the plaintiff was entitled

to recover on the warranty, though his mind were unaffected by the disease, etc.

Inasmuch as the judgment must be reversed for the error of the court in its charge to the jury in relation to interest, it is unnecessary to give any opinion as to the sufficiency of the evidence to sustain the verdict, etc.

The judgment must be reversed; and the cause remanded with instructions to the court to grant the appellant a new trial.